Scott McEwen, Roblox Feedback for Appellant Motorola Mobility. I'd like to reserve 5 minutes for rebuttal. Claim 26 of the 006 patent recites a summary store. It's important that the term summary is to the left of the terminology store because it modifies store. It's a functional limitation. The PTO has interpreted... What do you understand summary to mean? Summary is an accessible database in accordance with the 006 patent. It's described as a significant aspect of the invention. In fact, it's more or less the entirety of the invention. It doesn't mean a store which has summaries of other items in it? No, it does not, Your Honor, and the reason we know that is from the claim itself. The claim describes explicitly what is in the store, and that's identifying information. How is that inconsistent with what I said? What the PTO has said is here's a display in the prior art, and at some point, there's information which we can characterize as a summary. Therefore, that's a summary store. What the claim is saying is we have a store, and it stores identifying information, and it's also called a summary store. In the patent specification, we have a summary store, we have a profile store, we have a mail store, we have different stores, and we can't just assume... The summary store stores summarized information? The patent describes... Yes, no. In some cases, the summary store stores partial emails. I wouldn't consider that a summary of anything. It's a partial email or it's a full... That's not required by the claim. Nothing in the claim says it has to store partial emails. No, I agree with that. I'm talking about the functionality of the summary, the way it's described in the specification as a significant aspect of the invention, is its functionality as an indexable database that works in cooperation with an intermediate server. The whole point of the invention is to have these... They call them select and summary index. In your view, a summary store is a store that stores an index? The Motorola's interpretation is that the summary store, at the very least, is an accessible database. It's not a buffer memory that's associated with a display, which, by the way... Is there a difference between a summary store and a summary index store? What's described in the specification is a select and summary store. That is the summary store. A select does not appear in the claim. It's the summary store's shorthand notation for that functional component, which is part of the controller in Figure 4 on the left-hand side of that figure. Maybe I'm missing it, which is entirely possible. But I still don't understand the disagreement you have with the definition that Judge Stike suggested. Stike claims it again, because I thought his definition of store that keeps summaries of information was adequate under these claims, but you seem to be pushing back and saying, no, it's not. So help me understand why not. Well, I think in some cases that's where part of the confusion lies here, is that you can look at information and say, well, that's a summary. And it's unfortunate we use the word summary, but the word summary... But you did. Exactly. But what we're using it for is the same way profile store and mail store. It's modifying that memory structure. It's a functional limitation of talking about what that memory is doing and what function it serves in the device. Couldn't you have amended during re-examination? We could have amended during re-examination, but our position is that by the inclusion of the word summary in the claim, that meaning is already imparted to the claim. We could have just said a store, which has identifying information, but instead we called it a summary store. No, but you say a summary store to store identifying information. So you make it really clear what the purpose of the summary store is right in the claim. I know I'm really... Well, we make it clear what is stored in the summary store, for sure. But still, again, we could take the word summary out of the claim. What we're looking for from the patent office is what does the word summary mean? What they've said is, well, let's treat summary as if it was on the right-hand side of store. So that refers to what's stored in the memory. And it can't mean that because we know what's stored in the memory. It's identifying information. Summary store has to... there has to be some functional aspect of the memory. What do you think summary store means? It's a database that's accessible by the user. Any database? Correct. Well, any database that performs the function of the claim, which is a store identifying information. A buffer for a display is not an accessible database. A user is not accessing the buffer of a display. Every display in an electronic device has a buffer. Clearly, Motorola is sophisticated enough that they're not just trying to claim any memory that relates to any electronic device in existence. It gets down to whether or not summary store is a reasonable interpretation based upon what the PTO has said to treat summary as if it was on the right... help you in distinguishing Hoshi. Because what they've identified as teaching the summary store is a buffer for a display. So a buffer is a temporary memory that's set up, it's dimensioned, and it's matched up to synchronize with the specific requirements of the display to make sure that the data gets there on time, for example, or with enough to basically display. So what you're saying is that Hoshi discloses a temporary summary store but not a permanent summary store? Hoshi discloses a memory. It does not disclose a database that a user is accessing for data management. Wait a minute, wait a minute. What do you mean it doesn't disclose a database? Hoshi's display buffer discloses a summary of emails in the form of urgent email list. That summary of urgent email list didn't exist elsewhere, correct? It was produced in Hoshi at the display buffer. Well, it was passed from the, I think it's called the mobile station, it's passed from the mobile station to the pen computer, which is a thin client, which is more or less just a display. So you're receiving data and it's put up on the display. You're not, as a user, picking up the pen computer and accessing the data to select and manage two sides of these two databases. Wait a minute, but in the summary store in Hoshi, can't you choose emails from the urgent email list and have them forwarded to you for receipt? You can, but you're... Isn't that manipulation of a database that's going on right there in that summary store? What it's doing is retrieving data from the other side. So that data is not stored locally and managed locally. The list is locally. The list is produced locally, but you're, as a user... But isn't that list the summary? Isn't that exactly what the summary is? It's a list of urgent emails that's been produced and stored at that display buffer. Right, and I think that's what the PTO has said, is that list is a summary. And what we've said as well, we're not talking about the data. We're talking about the function of the memory. So the summary is the function of the memory. I don't understand. I'm sorry. Try again. Okay, so the display buffer is just receiving a list that's sent to it. So here's a list of email. The list, in your view, is not a summary store because it doesn't include all the data from the email? Well, the list is data, right? So the list comes in. The list comes in. It goes into the buffer. So why isn't the list a summary store? Because it's not a database that a user is accessing. But it is. It's a list of urgent emails. Therefore, it is a database. It is a memory which contains a list of urgent emails, and the user can access it by clicking on it and thereby retrieving a particular email. Agreed, but that's accessed from a remote server. So you're seeing a list and you're sending, give me email number two, and that comes from the remote server. It's not a local store. But here's what your claim says. A summary store is a store identifying information received from the host via communication server about data units not sent from the host. Correct. So how is receiving a list of emails, urgent emails, not receiving identifying information from the host via the communication server and about data units not sent, about the emails themselves that weren't sent, which you can click on and then have sent. But how does that not fit right within the claim language? Well, what the claim is talking about is receiving data about emails. It's not just a list. It's actual, it's a partial email. So you're building an index locally. But I thought you said earlier that you weren't limiting it to partial emails. No, I'm describing one of the embodiments in the specification. The partial email is not in the claim. I'm just explaining how the summary goes. But having a list of headers would satisfy the claim, no? Well, but they're not stored in the memory that's accessed by the user for data management purposes. That displayed buffer throws up what that list is on the display, and then you select I want emails. Is that list an index? It's not an index in a database sense. It's an index in a sort of visual sense. But what we're talking about is the functionality of the memory and how it's structured together with the controller to operate the invention, which Motorola has called out as whatever the design is. It's important to have that summary index, and you have it on two ends of the equation here so that you can coordinate which emails you want. Sometimes there's partial over here. Sometimes there's partial over on the other side. So you're synchronizing the email. So you need that user accessible database in order to accomplish what is the invention. So what you're saying is that what's appearing on the screen is data which would make up, which could well be all the data in a database, but it's not a database itself. It's not a database that the user can manipulate in conjunction with another summary index, which is somewhere else, which is what the key of the invention is. But clearly the user can manipulate it. Well, not the storage or the updating of it. Again, here's a list. Give me email number two. Email number two is sent. It's not, okay, you have email number two in email. It's a partial storage. Update it so I have the full email locally that I can access later. That's the database function of the summary store in the old six-pack. Okay, Mr. McKinney, would you like to save the rest of your time here? Yes, let me just continue for 30 seconds just so I address the other aspect in this appeal, which is the meaning of the term host as recited in the claim. What we know about a host is stated in the claim, and that's at a minimum, the data units that are not sent are at the host. So the host, at a minimum, is hosting data units. In rejecting the claim, what the patent office said is they pointed to an intermediate server that doesn't host what they're identifying as corresponding to the claim, in this case, which is email. And when we pointed that out to the patent office, they said, well, a host doesn't have to host anything. And so what we're really asking for here is the PTO to give some weight to summary, as it appears on the left-hand side of store, not the right, and to provide some meaning to host that's correct. I reserve the rest of my time for rebuttal. Okay, thank you. Mr. Kelly? Mr. Kelly? Mr. Kelly, does a host have to host anything? May it please the Court, good afternoon, Your Honor.  Thank you, Mr. Kelly. I'm sorry? I said thank you, Mr. Kelly. Go on. Apparatus claims cover what a device is, not what a device does. Those are the words of this Court. This is an apparatus claim. Every argument we heard this morning was all tied to function. Mr. McEwen kept saying, well, summary tells us what the function of the storage is. Now he's telling us hosting is the function of the host. Well, a host is a server, as Mr. McEwen told the Board, and admittedly the server, when it functions as a host, does certain things. I suppose it talks to multiple elements or something like that. But that is the function of the server when it's hosting. This claim does not have a host as a positive element of the claim. Claim 1 in their patent does. This claim doesn't. This claim, therefore, doesn't even require a host. But to the extent it does require a host, all it requires is the structure. What do you mean it doesn't require a host? A summary store, it's a store identifying information received from the host. The apparatus has got to have a host or it's not going to be within the claim. Claim 26, isn't that what we're talking about? Yes, Your Honor, we're talking about Claim 26. And Claim 26 is to a remote communication device that has a memory in it. And, yes, that memory has to be able to do what the claim says it has to be able to do. But nowhere does there have to be a host that's actually doing that. In other words, as a claim... But what is a summary store? It's a store identifying information received from the host. If this information is not going to be received from the host, how could you ever infringe or meet the limitations of this claim? You would infringe this claim, Your Honor, if you had a device with a summary store in it that could receive information from a host and store it. That's all this claim reads on. Claim 1 of their patent is a system that has a host in it. Now, for that claim, you have to have the host. There, they're claiming the system. And let's remember what this invention is. The invention is a way to move e-mails from a remote device or from, I guess, a remote server to your personal device. And instead of transmitting all the data all the time, it transmits a summary of the data. The user sees the summary. The user scrolls through, says, ooh, I want this one, clicks it. The device goes back and says, okay, let me have that e-mail. That e-mail comes back down. That's what Motorola's device and system does. That's what Hoshi's device and system does. In this particular claim, Motorola is not claiming the system, nor is Motorola claiming how the system functions. Motorola is claiming one and only one thing, a controller of the remote device that has a summary store in it. As long as a device, a remote device, has a summary store in it that can do what this claim says it needs to do, then the claim, that device is within the scope of this claim. Now, we don't even have to rely on that view of this claim. We can go deeper because Hoshi does exactly what this claim requires. Now, Mr. McEwen said a couple of times that he wants us to give way to the word on the left of the word summary, summary store. Well, if you go and you look at the 006 patent, where it defines what a storage device is at column 5, which is at A35 for the record, it says that the select to the summary index store 213 is any available device, e.g. a read-only memory, disk, or program, e.g. a database, for storage of the specified information. It's a functional limitation of the claim if it's a limitation at all. What I understand them to be saying, and maybe I'm not understanding correctly, is that they say that the store here is on the display device rather than on the host. Am I understanding that correctly? I think you are, Your Honor. I admit I was a little confused by the presentation this morning because I understand the way their system to work as well as the way this claim suggests it works is that what the device has on it is a summary of the email. It doesn't have the full text of the email. The display device. The display on the device that the user is holding. Now, they would say, I think, well, we're not talking about a display. We're talking about some other component within the device that's not the display. But the fact is that this claim doesn't talk about multiple components. It doesn't say we've got a display, we've got a receiver, we've got a processor, and we have a storage device over here. All it says is somewhere there's a summary store. And that we know from the patent, a summary store is anything that can store the desired data. Now, Hoshi's system, I don't think it's disputed, gets a summary. It shows the user the summary long enough for the user to look at it. The list of urgent emails. That's what you're claiming is the summary, right? Yes. Okay. Thank you. And the user looks at the list of urgent emails. I suppose the user could look away. The user could put the device down. The user could look at the device again. They're not going anywhere. The reason they're not going anywhere is because they're stored on the device somehow. Now, maybe they're stored in the display buffer. Maybe they're stored in the memory. Memory. However it's done. I mean, Hoshi is using a Windows-based computer. That's what Hoshi says. That's what the Penn Station is. So I don't think it's a terrible leap of logic to say there's a memory in there somewhere. But what we know is that the display is not instantaneous. It sits on the display long enough for a user to look at it, which means the information displayed is somehow stored in that device. Now, can you return to host, though? Because I'm a little bit confused. Am I hosting a party if it's not held at my house? And I'm not, you know, the person passing out food? I mean, the plain meaning of host to me implies that you are someone who is hosting something. It's hard for me to understand the PTO's claim that no, host is simply a memory. It isn't host. It doesn't have to host anything. Just any server will do. So that's something I'm really struggling with because I don't see anything in this specification that disclaims the plain meaning. And I don't think there's a law student in this room that doesn't know what the plain meaning of the word host is. So I'm a little bit confused why the PTO is alleging that a host doesn't have to host anything. Your Honor, you're a host of your party, whether your party's happening right now or happened a week ago. The fact of the matter is hosting is a function. It's something people do or it's something servers do. Well, in this case, the host is referred to as a noun, not a function, not a verb. And it seems to me the host is a thing in these claims. And if I believe, contrary to your earlier argument, that a host is required by these claims, why does the plain meaning of the word host not require the memory to host something? Why aren't you just arguing that this memory does host something? I'm going to get there. Because that, to me, seems like a winning argument. No, that's fair. The host argument seems like your losing argument. Your Honor, that's fair, but this is an important part of patent law. So I don't want to skip over it too quickly. Host is a functional requirement. It's a functional limitation. But not in this claim because they call it the host. It's a thing. I understand it's a thing, which means we have to know what the structure is to see if we have the thing in the prior art. And I think Mr. McEwen said it best in his great brief where he said, a host is a server having a specified function. That is, what gets us a host is two things. The structure that can host and the fact that it's actually actively hosting at that time. That second half, that's a functional limitation that doesn't limit an apparatus claim. If this claim was to a hammer that hammers nails, and I find a hammer that's for the purpose of breaking glass, that hammer is within the scope of the claim if the hammer can hammer nails. And the fact that that hammer never breaks glass is irrelevant. That's the functional limit. Even if we call the prior hammer a glass breaker. You're now back to your argument that the claim doesn't require a host as opposed to answering my question, which is if I believe the claim does require a host, why doesn't the host have to host something? Isn't that the plain meaning? The host has to host something. If I think it's a thing, and I think it's required by the claim, why doesn't it have to host something? Hoshi's memory station server does host something. Okay. I'm willing to go there with you. Hoshi's structure has three components in it. The first component, if you're looking at the figure of the component on the right, is the mobile station server. And the way Hoshi operates is it has a server environment for, for example, hosting mail inside an office with a building and wires and computers. And then what Hoshi says is, well, we'd like a way for people to access their mail remotely. And so Hoshi packs on this extra structure. And this structure he calls the base station. In the base station, the first thing at the top is the mobile station server. And what the mobile station server does is it compiles and reduces and filters the emails for the remote devices. So in that sense, we would say that the mobile station server is functioning as a host, even if we want to go down the road of, you know, giving that functional limitation weight. And Hoshi's exact – In fact, what it's hosting, to make sure I understand you, is it's hosting the urgent email list. That's what – it has generated it, created it, and is holding it. Is that what it's doing? What is it hosting? Tell me. Well, I'll tell you what Hoshi says. And this is at page 885 of the record. It's at the top right side of the right column. It says, the main purpose of the server is to transform the data sent to and received from the mobile station. So it's the server that's transforming the data, sending the summaries, if you will, of the urgent email. Is there argument that it isn't hosting it because it's not storing it? It's just transmitting it? Your Honor, I think their argument is it doesn't say host. Well, does a host have to store or does a host just originate? Your Honor, I think as long as a server – I mean, what they've said is a host is a server that hosts. So as long as – In your view, what does host mean? Does it mean it has to store or is it sufficient to just transmit it? Well, I think in this case we don't have to get there because it's clear that here the transmitting device is what Hoshi calls the mobile station gateway. So the purpose of the mobile station server in Hoshi – Yeah, but they use the word host. I mean, we keep having this problem, what's meant by host? Your Honor, I would say that a host is a server that is capable of hosting. Yeah, but what does hosting mean? Hosting is – I mean, the way the patent uses the term is a functional requirement. The way the patent says it is I have these devices on one side and I have the host on the other side. So what does the host do? The host is the entity, if you will, that is sending the information out to the remote devices. Transmitting the information, right? Yes, but not – I would only equivalent – not the actual transmitter of the information. It's the device – it's the dealer in a card game. It has to have a core communications function in some fashion. Well, no, it has to perhaps deal with something that has a core communications function. That's the way their system works. That's the way Hoshi's system works. Does it have to have a storage capability? I don't know, Your Honor. I don't think it does in terms of this claim, but I want to get back to what's claimed here because as long as this remote device and the summary store is capable of getting the information from a host – Can I ask you a question about this hosting? In their blue brief at page 19, I'll read you what they say Hoshi's mobile station server does. Okay. Mobile station server. Rather, the MSS is an intermediary server that receives email that is hosted at mail servers, the true host, creates an urgent email list, and forwards the urgent email list to the mobile pen station. Why isn't the urgent email list the thing they are hosting? Their own brief has an admission that Hoshi and the MSS in particular in Hoshi receives email, generates an urgent email list, and then forwards it on. So why isn't your argument that based on that admission, the MSS is a host because it's receiving emails, generating a list independently, and hosting something new, and then sending it on? So you can say whatever the definition of host is, they've made an admission, and this clearly falsifies it. Well, Your Honor, I agree with everything you've said. We didn't style our case based on the admission that they made in their blue brief because we did everything before their blue brief came in. But I think what I've said hopefully is similar to what you've said. We did everything. You mean the board took it? I mean the board made its decision. I mean we can't stand up and say our rejection is right because of their admission. It's not based on their admission. It's based on Hoshi's teaching. And I agree with everything that Your Honor just said. What the mobile station server does... Well, wait, did anything I... OK, you agree with me, but is there anything I've said that's inconsistent with the board decision? No. I didn't think there was. I thought that their admission is completely consistent with the board decision and just sort of reinforces why there is in fact a host present. But if I'm somehow on a limb creating a reason that the board didn't use, please tell me because I don't want to do that. That's not fair to the applicant. You're right and you're not. There's never been any dispute in this case that the examiner, the board, our brief all treat the mobile station server as the host. Now I think what's happening in Hoshi's system is there's really two hosts. There's the global host that's hosting all the email. And that perhaps has all the information about every email in it. And then there's the mobile station server that's the host for the remote devices. Now the mobile station server is where the summaries are compiled, the emails are filtered. So I think we can trust Judge Dyke that the mobile station server has a memory for the information it's creating. And maybe it goes back to the main host to get the information about the email. But that doesn't mean the mobile station server is not serving... Go back to what I asked you. And I said core communications. And I think you said, well, there's available communications apparatus out there somewhere. But focus instead on the word core. Isn't a host always a core in some fashion? The host, I mean, all these components are communicating with one another. Right. Always. So the server is communicating with multiple things at once. The only reason I think corrected, Your Honor, is because here we're dealing with remote devices that are the end of the cellular network. So we actually have to have a more robust transmitter of data across an RF network, as opposed to just the regular output that would come out from the server. So the server absolutely is communicating with the device. Yeah, but I'm not concerned with the communication. I'm concerned with what I would call a core function. If you were wire diagramming it, a host would always, in some fashion, it wouldn't just instantaneously transmit, although, of course, it might, but that it would have some function of its own in some fashion. It would have a core function of something. Yeah, it would have whatever functionality is required to serve as a server. And here, as long as the remote device is capable of getting that information, storing it, allowing the user to select from it, and then going back and getting the full email, we not only have something that's within the scope of the claim, we have something that's performing the exact invention. Okay, thank you, Mr. Kelly. Thank you. In the Q&A, you have a little over three minutes here. Thank you. I want to get back to this idea of what the examiner and what the board said about hosts. The reason that they said that the host doesn't have to host anything is because that mobile station server that they're pointing to can't be the claimed host because it doesn't have the data units. It doesn't have data storage? It doesn't. The claim requires that the host... No, no, but answer. Is your point it doesn't have data storage? The PTO has not identified any storage. But is that your contention? I would imagine that it has storage. Most servers do, but that's not in the record. And really, it's not really important. Again, the reason they said... I'm not understanding the point. Go ahead. I'm happy to explain. The reason that they said... Well, let me throw in, Mr. Kelly said Windows-based. So that is in the record, is it not? Well, I think that's incorrect. The Windows-based system is the workstation. The pen computer, back in the mid-'90s, there were not pen computers that could run a Windows operating system, so they were thin clients. The Windows system is to the right. So getting back to why the PTO said that a host doesn't have to host anything, because if you're identifying that mobile station as the host, it has to have the email, it has to have the data units if we're going to consider the data units email. What it has is the list. It creates metadata, and then it sends it over to the pen computer. It doesn't have the data units. Wait a minute, but why isn't that list what it hosts? It doesn't say it has to host interline emails just to host them. I think the simple answer is I don't think that, again, the PTO said it doesn't have to host anything because they were unwilling to make that fact-finding, which is, okay, well, we're saying it hosts the email list. Well, they don't have to make the fact-finding because you said it expressly in your brief. So at this point, I've got an admission on record. I don't have to worry about their fact-finding. You say that the MSS is an intermediary server that receives emails, creates the urgent email list, and forwards the urgent email list to the mobile pen station. But it creates the list. Now, how it receives the email, you know, it may ping the server to get a list of what's sitting on the server, which is the host, which is where the email is, create the list, which is metadata, and send it to the pen computer. It doesn't host the email, and that's what the claim requires. The host has to have the data units, which are not sent to the pen computer. Wait, where does the claim require that? A summary store to store identifying information from the host. So all the host has to have is the identifying information, which is the list of urgent emails. But that claim continues. A summary store to store identifying information received from the host via the server about data units not sent from the host. So we know at the host is where the data units are residing. So that's why the PTO is going out on a limb here and said, well, the host doesn't have to host them. I follow why the host has to have the full emails. I don't read the language the same way you do. Well, the way the system works is the emails come into the host, and then you're sending. Well, the question is not how the system works. The question is what's your claim. Right. So what is claimed is the identifying information ends up in the summary store, which is not the data units because we know we don't transmit the full emails. They stay at the host. Well, wait a minute. You say they stay at the host, but what you actually say on page 19 of your brief, that sentence I keep returning to, is the MSS is an intermediary server that receives the email. And then you're going to say that is hosted at the mail server. But it receives the email. It doesn't just receive the list of emails. It actually does receive the email. So why isn't that the data units that are not sent forward at all? Well, I agree with the solicitor. That is what we said. It's receiving emails. Now, whether it's receiving all of the emails and storing them or accessing them to get a list, we weren't rewriting the PTO's rejection. Are you saying that the host has to store the emails? A host has to host something to be accessed by another. To store, yes. Yes? Yes. It has to store emails. Doesn't a server that receives an email always, as a matter of technological soundness, store it? It may be a very brief storage, but doesn't it, by virtue of the memory, if it receives it, it's storing it. If it's receiving the full email and not accessing just headers of the server saying what came in, here's 10 headers, here you go, create a list, send it out. The answer to my question is yes, right? If the server has transmitted the whole email, then yes, it probably stores it somewhere. But we don't know that from the PTO rejection or even the HOSHI description doesn't get down into that kind of detail. Okay, thank you, Mr. McKenna. Okay, thank you.